IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| United States of America, ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | No. 1:94-cr-00423 |
| v. ) | No. 1:95-cr-00087 |
| ) | |
| Hart, et al., ) | |
| ) | |
|     *Defendants*. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant David Watson, through the filing of a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. No. 84] (the "Motion"), seeks relief from two separate consecutive sentences totaling 75 months.[1] For the following reasons, the Motion is GRANTED; and Mr. Watson's term of incarceration is REDUCED to 33 months, with credit for time served.

BACKGROUND

In 1991, when Mr. Watson was 19 years old, he was involved in a fatal shooting, for which he was convicted in the District of Columbia and sentenced to 30 years in prison, which he served at Lorton Reformatory (the "D.C. sentence."). In 1994, while Mr. Watson, then in his early 20s, was incarcerated at Lorton Reformatory, Mr. Watson was convicted of two separate assaults for which he received a 75-month aggregate federal sentence, which he began serving only recently, following his completion of his 30-year D.C. sentence. As described in his presentence report, the first assault in 1994 occurred after a correctional officer denied Mr. Watson's request to speak

---

[1] Because the Motion seeks relief as to two separate consecutive sentences from different cases, the case numbers are cited by the Court alongside the docket entries where applicable.

again to his visitor. Mr. Watson became verbally abusive to the officer giving direction, Officer Kidd, after he was told to submit to a strip search. 1994 Presentence Report, Case No. 1:94-cr-00423 (TSE) (E.D. Va. 1994) (hereinafter "1994 PSR") ¶ 4. When Officer Kidd motioned for another officer to enter the room, Mr. Watson placed his hand on Officer Kidd's face, the second officer stepped between the men, and Mr. Watson then struck Officer Kidd in the face. *Id.* A jury found Mr. Watson guilty of violating Section 22-505(a) of the D.C. Code (1981). *Id.* ¶ 2.

The second assault occurred shortly thereafter while Mr. Watson was still incarcerated at Lorton. 1995 Presentence Report, Case No. 1:95-cr-00087 (AVB) (E.D. Va. 1995) (hereinafter "1995 PSR") ¶¶ 10–16.[2] While correctional officers were speaking to Mr. Watson after removing him from his cell for being verbally "difficult" with them, two of Mr. Watson's co-defendants from his D.C. case began acting out in their cells. *Id.* In that regard, these other inmates (1) chased and attacked several officers, (2) threw various objects at officers, (3) inflicted multiple stab wounds on an officer using a shank, and (4) set a fire. *Id.* A correctional officer suffered injuries, although nothing in the 1995 PSR explains any action or conduct undertaken by Mr. Watson that could have caused those injuries, and Mr. Watson's role as described in the presentence report ended with a verbal dispute with the officers. *Id.* A jury again found Mr. Watson guilty of violating D.C. Code § 22-505(a). *Id.* at 1.

Following the 1994 conviction, the Court designated Mr. Watson as a career offender by incorrectly assigning him points for a crime of violence pursuant to Section 4B1.1 of the then-current United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). Because of that career offender designation, later determined to be incorrect, he was sentenced to 51 months for this offense—the minimum allowed under the then-mandatory Guidelines. A year later, in connection

---

[2] Because there are two presentencing reports ("PSRs") in this case, they will be referred to as "1994 PSR" and "1995 PSR."

with sentencing on the second assault, the Court correctly found that "[Mr. Watson] is not a career offender because the offense for which he was convicted in [that] action was not a crime of violence." [Doc. No. 54] at 1. Following the second conviction, for which he was sentenced to an additional 24 months, Mr. Watson had a 75-month aggregate sentence to run consecutively to his D.C. sentence. *Id.* at 1.

On February 13, 2023, Mr. Watson filed the instant Motion. [Doc. No. 84]. In support of the Motion, Mr. Watson originally argued that (1) his age, race, and chronic medical conditions made him particularly susceptible to COVID-19 and that his incarceration at Allenwood USP exposed him to a particularized risk of contracting the virus; and (2) he no longer qualifies as a career offender and his sentence as such was imposed under an unconstitutional mandatory sentencing scheme. *See generally id.* However, in his supplemental brief filed on March 29, 2024, pursuant to an Order of this Court, [Doc. No. 97], Mr. Watson refocused his request for relief on his career offender status designation in connection with his sentencing on the first assault conviction and the application to that designation of Amendments 814 and 821 to the Sentencing Guidelines, both of which became effective November 1, 2023, and its effect on his sentence he is currently serving *Id.* at 6–9. He also recharacterized his medical circumstances as extraordinary and compelling reasons independent of the COVID-19 context. *Id.* at 2–6. The Government also filed a supplemental opposition brief, [Doc. No. 104].

By way of summary, Mr. Watson argues (1) that his medical circumstances qualify as extraordinary and compelling reasons for compassionate release under Section 1B1.13(b)(1)(B) or, alternatively, under Section 1B1.13(b)(1)(C) because he has severe and chronic medical conditions that the Bureau of Prisons ("BOP") is not equipped to handle; and (2) that a retroactive change in law, in combination with a mistake at sentencing, warrants a sentence reduction should

3

the Court agree that Mr. Watson has presented extraordinary and compelling circumstances. *See generally* [Doc. No. 97].

In its opposition to the Motion, the Government argues that (1) Mr. Watson's medical circumstances do not satisfy Section 1B1.13(b)(1)(B) or Section 1B1.13(b)(1)(C) because, at this point in time, Mr. Watson is "100% able to provide self care" and ▮▮▮▮▮ is easily controlled when he is compliant with taking his prescribed medications"; and (2) because Mr. Watson has not established an "extraordinary and compelling reason" for a sentence modification, the change in law and incorrection career offender designation in connection with his first assault sentencing do not provide the basis for a sentence reduction pursuant to Section 1B1.13(c). [Doc. No. 104] at 11, 15 (internal quotations omitted). Each of these arguments is addressed in turn.

## LEGAL STANDARD

In general, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Through the First Step Act, Pub. L. No. 115-391 § 603(b), 132 Stat. 5194 (2018), Congress created an exception that allows courts to grant a sentence reduction when, after considering the appropriate statutory sentencing factors under 18 U.S.C. § 3553(a), "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i) (a process referred to as "compassionate release").[3]

Section 1B1.13(b) of the Guidelines, which was amended effective November 2023, exhaustively enumerates the categories of "extraordinary and compelling reasons" that Courts may rely on in a Section 3582(c)(1)(A) analysis:

---

[3] To grant a sentence reduction under Section 3582(c)(1)(A), Section 1B1.13(a)(2) of the Guidelines also requires that a court determine that a defendant is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In addition, the First Act provides that "[s]uch a reduction [must be] consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). And, after some delay, there is a new applicable policy statement governing § 3582(c)(1)(A), 88 Fed. Reg. 28254 (May 3, 2023), which took effect on November 1, 2023. *See United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024).

4

      (1) Medical Circumstances of the Defendant;

      (2) Age of the Defendant;

      (3) Family Circumstances of the Defendant;

      (4) Victim of Abuse;

      (5) Other Reasons; and

      (6) Unusually Long Sentence.

This section is considered one of the governing "policy statements" of the Sentencing Commission. Accordingly, a defendant seeking a modification of his or her sentence must identify one or more of the enumerated extraordinary and compelling reasons as a basis for release.

      To address the possibility that the "Other Reasons" category would render the policy statement meaningless, the Sentencing Commission provided guidance that the "Other Reasons" category applies when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in [enumerated reasons] (1) through (4), are similar in gravity to those described in [enumerated reasons] (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Furthermore, Section 1B1.13(c) provides that "a change in the law shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." But while Section 1B1.13(c) expressly limits the use of changes in law, standing alone, for the purposes of finding extraordinary and compelling circumstances under "Other Reasons," nothing in that section limits the consideration of a change of law in conjunction with other circumstances for the purposes of compassionate release, and the Fourth Circuit has recently reaffirmed that a change in law is a relevant consideration, even under the new policy statement. *Davis*, 99 F.4th at 658 ("[T]he latest policy statement serve[s] to confirm and amplify this Court's earlier ruling" that changes in law "remain

5

relevant when a court has to decide when and how to modify a sentence.") (citing *Concepcion v. United States*, 597 U.S. 481, 494 (2022)); *accord United States v. Worlds*, No. 21-7535, 2024 WL 3439422 (4th Cir. July 16, 2024) (affirming *Davis* by remanding "for consideration of whether the changes in sentencing law at issue constitute an extraordinary and compelling reason for release in Worlds' case").

## DISCUSSION

### I. MR. WATSON HAS ESTABLISHED EXTRAORDINARY AND COMPELLING CIRCUMSTANCES

#### A. Defendant's Medical Circumstances Do Not Satisfy the Criteria Outlined in Section 1B1.13(b)(1).

A defendant's medical circumstances qualify as extraordinary and compelling reasons if, in relevant part, the defendant is either: "suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13(b)(1)(B)(i), or "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

According to Mr. Watson, the BOP is not equipped to handle an inmate like him because he has "various serious *chronic* conditions . . . including ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ that "have continued to deteriorate over the last year." [Doc. No. 97] at 3 (emphasis original). Additionally, Mr. Watson contends ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" *Id.* at 4 (emphasis original). Mr. Watson takes issue with BOP's

6

denial of his several medical requests[4] and fears some of his conditions will irreversibly worsen if he fails to obtain adequate treatment. *Id.* at 5–6. The Government maintains that Mr. Watson is "100% able to provide self care" and that ▮▮▮▮▮▮▮▮▮ is easily controlled when he is compliant with taking his prescribed medications." [Doc. No. 104] at 11 (internal quotations omitted). Moreover, the Government contends ▮▮▮▮▮▮▮▮▮ is a relatively common condition, making it less than extraordinary. *Id.* at 7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Mr. Watson's medical circumstances do not establish an independent basis for extraordinary and compelling reasons for compassionate release under either Section 1B1.13(b)(1)(B) or Section 1B1.13(b)(1)(C). Although the Court finds, as the Government concedes, ▮▮▮▮▮▮▮▮▮ is a generally serious medical condition," [Doc. No. 104] at 11, having a serious medical or physical condition, including the medical issues Mr. Watson faces, is only one half of the Section 1B1.13(b)(1)(B)(i) analysis. Critically, and as most relevant here, the defendant must also have a diminished ability to provide self-care in the prison environment. At least since his transfer to Beaumont USP, according to his doctor's administrative note, [Doc. No. 104] at Ex. A, Mr. Watson has been able to engage in self-care. Since Mr. Watson's ability to provide self-care has not been diminished, Mr. Watson falls short of establishing an extraordinary and compelling reason under this prong of the "Medical Circumstances" category. Moreover, while the record shows that his previous placements may have been unable to provide the full

---

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

range of requisite care, Mr. Watson's current placement has provided more care, particularly with respect to ███████████████████████████████████. [Doc. No. 104] at 12–13.[5]

By way of summary, while the record reflects a general trend of deteriorating health and denied medical requests during his incarceration over the years, Mr. Watson's present medical circumstances do not satisfy the criteria set forth in the applicable policy statement. For the foregoing reasons, this Court finds that Mr. Watson's medical conditions do not provide an independently extraordinary and compelling reason for compassionate release.

### B. Mr. Watson Does Not Qualify as Having An Unusually Long Sentence Under Section 1B1.13(b)(6).

The "Unusually Long Sentence" category applies when "a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment." U.S.S.G. § 1B1.13(b)(6). Under these circumstances,

> a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.*

The parties agree that Section 1B1.13(b)(6), the "Unusually Long Sentence" category of extraordinary and compelling reasons, cannot independently be the basis for his Motion since despite now having completed his prior 30-year sentence, Mr. Watson has not served at least 10 years of his present term of imprisonment for the federal sentence. [Doc. No. 97] at 6–7; [Doc. No. 104] at 15.

---

[5] 

8

### C. Mr. Watson Qualifies for Compassionate Release for "Other Reasons."

Although Mr. Watson does not facially qualify for release under Section 1B1.13(b)(6), for the reasons stated below, he qualifies for compassionate release based on "Other Reasons," including on the grounds that (1) there occurred a retroactive change in law, and its associated relief would benefit Mr. Watson but-for his incorrect designation as a career offender at sentencing on his first assault convictions, as a result of which there is "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion [was] filed,"[6]; (2) he has spent nearly 30 years—over half of his life—in prison since his sentencing for the assault offenses, during which time he has shown successful rehabilitation and developed a strong reentry plan with his family's support; and (3) these factors in combination constitute extraordinary and compelling circumstances, consistent with the Sentencing Commission's policy statements and similar (in kind and gravity) to other circumstances that courts have found to be extraordinary and compelling.

1. **Mistaken Career-Offender Designation Deprives the Defendant of Retroactive Benefits that the Commission Intended for Him**

   *a. Mr. Watson is not collaterally attacking his sentence.*

A defendant may not use a compassionate release motion to collaterally attack his original sentence. *See United States v. Evans*, No. 5:15-CR-00020, 2023 WL 8703403, at *4 (W.D. Va. Dec. 15, 2023) ("An argument that requires the court to examine whether the original conviction, sentence, or both, were valid *at the time they were imposed* should be brought via a § 2255 petition.") (citing *United States v. Ferguson*, 55 F.4th 262, 271 (4th Cir. 2022)) (emphasis added). The Government contends that the basis upon which Mr. Watson seeks compassionate release,

---

[6] While this language comes from Section 1B1.13(b)(6), the "Unusually Long Sentence" category, it goes to the comparable gravity of Mr. Watson's reasons and those enumerated by the Sentencing Commission. It also further demonstrates that the result reached today reflects the Commission's goals and policies in the applicable policy statement.

9

*viz.*, his incorrect designation as a career offender at his sentencing on his first assault conviction, constitutes a collateral attack on his sentence that may be considered only within the context of a *habeas* petition, not a motion for compassionate release. Nevertheless, in certain specific circumstances, a sentencing mistake, such as the mistake in this case with respect to career offender status, not only impacts the sentence received—the attack of which sounds in *habeas*—but *also* affects a defendant's access to retrospective relief intended for him, which can be the basis for extraordinary and compelling circumstances. *See, e.g.*, *United States v. Curtin*, No. 14-0467, 2023 WL 8258025, at *1, 3 (D. Md. Nov. 29, 2023) (finding it extraordinary and compelling that a defendant would no longer be a career offender if sentenced today after case law establishing the defendant's statute of conviction was not a "controlled substance offense" for purposes of Section 4B1.2(b)). This distinction between a collateral attack on a mistake at sentencing and a request for relief from a mistake that deprives a defendant of a subsequent change in law or policy recognizes that the mistake not only deprives the defendant of the retrospective benefit intended for him, but also frustrates the policy goals of Congress and/or the Sentencing Commission—a result that is in effect "contrary to the applicable policy statement." 18 U.S.C. § 3582(c)(1)(A).

The Fourth Circuit has not squarely addressed this precise issue since the November 2023 effective date of the amendments to the Guidelines, but it has emphasized the appropriateness of considering intervening changes in law or policy within the context of a compassionate release, rather than *habeas* analysis. For example, in *United States v. Davis*, 99 F.4th 647, a recent compassionate release case decided after the Sentencing Commission's amendments to Section 1B1.13, the Fourth Circuit held that the district court abused its discretion by failing to consider the defendant's arguments that, if he were sentenced today, two intervening changes in law would warrant a substantially shorter term of imprisonment. *Id.* at 656–58. In that case, the defendant

10

argued that he would not have received the career-offender enhancement and would have been eligible for a base offense level reduction under a Guidelines amendment. *Id.* at 656–57. Importantly, the Court noted that these arguments did not serve to "attack the validity of his sentence," and that, contrary to the district court's conclusion, his compassionate release motion did not "sound in habeas." *Id.* at 657.[7]

Like the defendant in *Davis*, Mr. Watson "does not claim that a mistake was made during his original sentencing, and, as a result of that mistake, the sentence imposed was too long." *See* 99 F.4th at 657. Instead, Mr. Watson is arguing that "subsequent changes in the law mean that, if sentenced today, his term of imprisonment would be substantially shorter." *See id.* Specifically, Mr. Watson argues that, if he were sentenced today, his offense of conviction would not qualify as a crime of violence and therefore he would not qualify for a career-offender designation, and, critically, because of Amendment 821, he would be eligible for a lower advisory Guidelines range. [Doc. No. 84] at 19–23.

For the above reasons, Mr. Watson's mistaken career offender designation affects an intended benefit under subsequent changes in the law, his seeking relief on that basis therefore does not sound in *habeas*, and he is therefore not procedurally barred from seeking access to Amendment 821 relief through his compassionate release motion.

### b. If sentenced today, Mr. Watson would benefit from Amendment 821.

Mr. Watson's 1994 first assault offense was wrongly determined to be a "crime of violence," *see* 1994 PSR ¶¶ 30–31, and as a result, he received a career offender enhancement

---

[7] The Fourth Circuit also explained in *United Staes v. McCoy* that "the *very purpose* of § 3582(c)(1)(A) is to provide a safety valve that allows for sentence reductions where there is not a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify a reduction." 981 F.3d 271 at 284 (emphasis added). Much like Amendment 782 for the defendant in *Davis*, Amendment 821 presents a "second intervening change in law that would further reduce his sentence if he were sentenced today." *See* 99 F.4th at 656. Noteworthy is that, on remand, the district court in *Davis* found an extraordinary and compelling basis for compassionate release. *United States v. Davis*, No. 4:13-cr-00004-AWA-TEM, slip op. at 5–7 (E.D. Va. July 2, 2024).

11

based on that characterization of the assault offense. But the D.C. statute under which he was convicted, Section 22-505(a) of the D.C. Code, was just one year later at Mr. Watson's 1995 sentencing deemed to be too broad to qualify (under the categorical approach) as a crime of violence. *See* 1995 Findings and Reasons, Case No. 1:95-cr-00087. The effect of the mistaken designation was substantial. At his 1994 sentencing, based on his career offender status, Mr. Watson obtained a Total Offense Level 17 and a criminal history category (CHC) VI (with 13 criminal history points). 1995 PSR, Worksheet D (Guideline Worksheet). Using the 1994 edition of the Guidelines Manual, which were mandatory at the time, the Court imposed a sentence of 51 months, *the lowest possible sentence* in the then-mandatory Guidelines sentencing range. *Id.*

The Government concedes that if Mr. Watson were sentenced today under Section 22-505(a), his 1994 offense "would not qualify as a crime of violence under [Section] 4B1.2(a)." [Doc. No. 104] at 16. And without that designation, Mr. Watson would be eligible for the retroactive benefits of Amendment 821's status point reduction, resulting in an advisory, not mandatory, Guidelines range with a low end of 9 months. Nevertheless, the Government argues that Mr. Watson should continue to be considered a career offender for the purposes of his compassionate release motion, without any benefit under Amendment 821, because he could today be charged under a recodified version of his statute of conviction that would qualify as a crime of violence under the categorical approach and therefore result in the same career offender status. *Id.* Specifically, the Government contends that Mr. Watson's conduct today would fall under, not

12

Section 22-505(a),[8] but Section 22-405(c),[9] which "covers aggravated assaults against correctional officers [like the one it contends Mr. Watson committed] that inflict significant bodily injury," *id.*, and that this narrower provision is a "crime of violence" for career offender purposes under Section 4B1.2(a)(1) today. [Doc. No. 104] at 16 (citing *United States v. Kendall,* 876 F.3d 1264, 1273 (10th Cir. 2017)). Aside from the constitutional issues associated with attributing to a defendant a conviction under a statute under which he was never charged or convicted, Mr. Watson was tried and convicted by a jury under Section 22-505(a), and it is that statute that defines the scope of relief he may be entitled to at this stage of the proceedings.

In sum, Mr. Watson would not have received a career offender designation if sentenced today under the statute of conviction for his 1994 offense. And without that designation, Mr. Watson would be eligible for the retroactive benefits of Amendment 821's status point reduction, resulting in a lower Guidelines range. Moreover, today, unlike in 1994 and 1995, the Court has the discretion to depart from the lower range, which the Court very may well have done at the original sentencing in light of the lengthy D.C. sentence. These reasons in combination are extraordinary and compelling.

The sentence that Mr. Watson received in 1994 on his first assault conviction was 51 months within a mandatory Guidelines range of 51-60 months. Today, the applicable Guidelines range for that conviction with the benefit of Amendment 821 is 9-15 months, with the low end of that range 42 months lower (about 82%) than the low end of his 1994 Guideline range. As a result,

---

[8] Section 22-505(a) allows for conviction based on nonviolent resistance or interference, among other things. [Doc. No. 84] at 21. Specifically, "Section 22–505(a), in pertinent part, provide[d] that a person has committed a felony if he 'without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates or interferes with ... any officer or employee of any penal or correctional institution ... while engaged in or on account of the performance of his official duties.'" *United States v. Bassil*, 932 F.2d 342, 344–45 (4th Cir. 1991).

[9] To obtain a conviction under section 22-405(c), the Government must prove *assault* on a law enforcement officer that either caused significant bodily injury or was committed in connection with a violent act that created a grave risk of significant bodily injury.

13

if sentenced today at the low end of the applicable Guideline range, Mr. Watson's combined 75-month federal sentence would be reduced to 33 months (about 44% of what he received).[10] Courts in this Circuit have found that similar and even less extreme sentencing disparities are extraordinary and compelling reasons for a sentence reduction. *See, e.g.*, *United States v. Owens*, No. 7:10-CR-60, 2022 WL 17821560, at *6 (W.D. Va. Dec. 20, 2022) (sentencing disparity of 52 months); *United States v. Shaw*, No. 5:15-cr-00025, 2021 WL 3007266, at *5 (W.D. Va. July 15, 2021) (sentencing disparity of 22 months).

Of course, with the exception of *Davis*, these cases were decided before the new limitations in Section 1B1.13(c). However, the Sentencing Commission, seemingly recognizing that they were closing off changes in law as an independent basis for compassionate release, created an alternative pathway to obtain a sentence reduction for certain targeted defendants under Amendment 821, which Mr. Watson would qualify for but-for his sentence mistake. The Court is hard pressed to think of a more compelling circumstance for a sentence modification than giving effect to the intentions of the Commission. Reaching a different result here would require turning a blind eye to the Sentencing Commission's policies and goals and to the very purpose of the relief offered by Section 3582(c)(1)(A).

2. **Age at the Time of Offense Conduct and Significant Time Served Since Sentencing**

The Fourth Circuit established in *United States v. McCoy* that a defendant's youth is a relevant factor in the individualized inquiry into whether extraordinary and compelling reasons exist. 981 F.3d 271, 274, 279, 286, 288 (4th Cir. 2020).[11] Following a survey of case law, the court

---

[10] And this, of course, assumes that the sentencing court would not have departed further, under the current discretionary framework, in light of his 30-year D.C. sentence.

[11] *C.f. United States v. Friend*, 2 F.4th 369 (4th Cir. 2021) (explaining that the defendant's role in the offense, age at the time of the offense, and upbringing warranted consideration in determining the appropriate sentence). While age at the time of offense conduct cannot alone be an extraordinary and compelling reason for a sentence reduction, it is established in the Fourth Circuit as an important factor in determining the appropriate sentence in an individualized analysis of a defendant.

14

of appeals found that a defendant's youth at the time of their offense is a relevant factor in Section 3582 analyses. *Id.* at 286 (citing, among other cases, *United States v. Jones*, 482 F. Supp. 3d 969, 979–80 (N.D. Cal. Aug. 27, 2020) (defendant was 22 years old at the time of his offense)). Additionally, the Court of Appeals noted that the defendants in the consolidated appeal—who ranged from 19 to 24 years old at the time of the offense—had already served substantial sentences—17 to 25 years—at the time of their motions, which "meant that each defendant had spent close to or more than half his life in prison." *Id.* In considering these facts, the Fourth Circuit concluded that "such factors as the defendants' relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they already served" can be extraordinary and compelling reasons supporting release. *Id.* at 288; *see also United States v. Johnson*, No. 1:97-CR-314-AJT, 2023 WL 5049267, at *6 (E.D. Va. Aug. 8, 2023) ("Johnson's age at the time his offense conduct began, continuing through his arrest, weighs in favor of relief").

Here, like the defendants in *McCoy* and *Johnson*, Mr. Watson's age at the time of his offense conduct, his childhood upbringing and family circumstances, and the amount of time he has already served in prison weigh in his favor.[12]

### 3. Rehabilitation, Strong Reentry Plan, and Family Support

As this Court recently observed in *Johnson*, "[w]hile rehabilitation alone may not constitute *the* extraordinary and compelling reason for relief, . . . [a] strong record of rehabilitation in the [BOP] is one factor that may weigh in favor of granting compassionate release." 2023 WL

---

[12] Growing up, Mr. Watson's father was absent, his mother had substance abuse issues, and he was placed in the foster care system. [Doc. No. 84] at 24; *see id.* at 10. Mr. Watson was also 23 years old at the time of his 1994 and 1995 assault offenses committed while incarcerated at Lorton. He is now 53, having served about 30 years in prison, most of which he served *after* his assault convictions, but with almost all of that time credited to his D.C. sentence. Mr. Watson spent over half of his life in prison before his federal sentence even began.

5049267, at *7 (citing *McCoy*, 981 F.3d at 286). Here, Mr. Watson has demonstrated a commitment to rehabilitation. He has maintained consistent employment at each of his facilities in various roles, including his employment with UNICOR, and his quality of work has been affirmed by at least one supervisor. [Doc. No. 84] at 24–25. He has also spent 952 hours in BOP programming, including classes aimed at preparing for the work force, successful reentry, and personal development, and has spent nearly 100 additional hours in educational courses and vocational training since transferring from Allenwood. *Id.* at 25. He has been awarded certificates for completing special psychological rehabilitation programs. Other inmates have written letters in support of Mr. Watson's character, mentorship, and positive impact on their prison experiences. *Id.* at 26. Moreover, his disciplinary record has been "completely clear" since 2014, despite being confined to some of the most dangerous prisons in the country. *Id.* at 26, 27. Mr. Watson has also been co-parenting his son during his incarceration, which has had positive effects on his son, according to character letters written by Mr. Watson's family. *Id.* Mr. Watson's son's life seems to have taken a stable path at least in part due to his father's love and teachings. *Id.*

Mr. Watson's reentry plan is strong, including his plan to "split[] his time with work, family obligations, and doctor appointments." *Id.* at 28. He plans to remarry his former wife and live with her family in the same city as his son; Mr. Watson's former wife has a stable job and her children are committed to help her in supporting Mr. Watson upon his release. *Id.* Importantly, Mr. Watson will not be returning to the community in which his original offenses were committed. *Id.* at 29. Mr. Watson's son also plans to aid his reentry and is eager for Mr. Watson to play a role in his granddaughter's life. *Id.* at 28. As a result of his family's help already, Mr. Watson has a firm employment offer at a local car dealership. *Id.* Mr. Watson has long-term goals for employment, including putting his commercial driver's license to use as a commercial driver. *Id.*

16

### 4. Totality of the Extraordinary and Compelling Reasons.

The compassionate release statute does not define "extraordinary and compelling reasons," and as such, the Fourth Circuit has directed district courts to "conduct a 'multifaceted' analysis and consider the 'totality of the relevant circumstances.'" *United States v. Nicholas*, No. 3:17CR120, 2024 WL 1658248, at *3 (E.D. Va. Apr. 17, 2024) (quoting *United States v. Hargrove*, 30 F.4th 189, 197-98 (4th Cir. 2022)). Additionally, "as explained in *McCoy*, consideration may be given to the defendant's age at the time of the offense, the defendant's prior criminal history, and his behavior and rehabilitation while incarcerated, the amount of time served, any sentencing disparity, and changes in the law." *Id.*

In sum, this Court has considered Mr. Watson's medical circumstances, his significant time served since his offense conduct, changes in law leading to a sentencing disparity between his original sentence and that which he would receive if sentenced today, his age at the time of his offense conduct, the amount of time served since sentencing, his significant post-sentence rehabilitation efforts, his strong reentry plan, and his family support, along with the stated goals of the Sentencing Commission. The totality of these circumstances provides extraordinary and compelling "Other Reasons" for a sentence reduction that are "similar in gravity" to the others enumerated in the applicable Sentencing Guidelines. *See* U.S.S.G. § 1B1.13(b)(5). For these same reasons, this Court concludes that Mr. Watson is not "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." § 1B1.13(a)(2).

### II. THE SENTENCING FACTORS WEIGH IN FAVOR OF RELEASE

Having determined that a sentence reduction is supported by extraordinary and compelling reasons, the Court turns to whether the sentencing factors under 18 U.S.C. § 3553(a) also support Mr. Watson's early release. Under Section 3553(a), the sentence imposed should be "sufficient,

but not greater than necessary," and, in relevant part, should consider: "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; the need "to afford adequate deterrence to criminal conduct"; and the need "to provide the defendant with needed . . . medical care . . . in the most effective manner." § 3553(a).

### A. The Nature and Circumstances of the Offense

The seriousness of Mr. Watson's instant offenses cannot be ignored—in the first assault, the presentence report indicates that a correctional officer needed stitches as a result of Mr. Watson's actions. 1994 PSR ¶ 4. In the second assault, however, there was a much looser causal link between Mr. Watson's actions and the harms suffered by correctional officers; there, Mr. Watson was speaking with officers while other inmates began acting violently, and it remains unclear to the Court what conduct was affirmatively undertaken by Mr. Watson. 1995 PSR ¶¶ 11–15. Without minimizing the seriousness of his offense conduct, Mr. Watson's offenses occurred within his first few years of incarceration at Lorton Reformatory, and he has maintained a clean record since 2014.[13]

### B. The History and Characteristics of the Defendant

In evaluating the characteristics of the Defendant, the Court considers "the most up-to-date picture" of Mr. Watson—"*i.e.*, how he appears at the time of resentencing"—not as he was when he was sentenced over three decades ago. *Johnson*, 2023 WL 5049267, at *15 (citing *Pepper v. United States*, 562 U.S. 476, 492 (2011)) (internal quotations omitted). In addition to his extensive

---

[13] Without excusing Mr. Watson's conduct, the Court also notes that Lorton Reformatory was generally known for its violent environment, as reflected in a documentary made about it. *See* [Doc. No. 84] at 5 (referencing the documentary, "Lorton: Prison of Terror").

rehabilitation and maturity as described above, Mr. Watson has had a positive impact on the people around him, including other inmates and his family members. His inmate mentees have attested to his contributions to their own rehabilitative efforts in letters describing his role in helping them manage their tempers and behaviors in prison. [Doc. No. 84] at 26. The record also evidences his commitment to positively impacting his son's life. *See id.* at 27.[14]

### C. The Seriousness of the Offense and Need for Punishment and Deterrence

There is no question that assault on a correctional officer is an offense warranting a serious sanction. However, in this case, Mr. Watson has already served nearly 30 years since the offense conduct, reducing the need for additional substantial sanctions. His rehabilitation and lengthy clean record shows that there is little need for specific deterrence, and because a reduced sentence would put him at parity with other defendants sentenced today, the reduction would not undermine the need for general deterrence.

### D. The Balance of the Sentencing Factors

If sentenced today, Mr. Watson would be over halfway through a 33-month sentence. On balance, the sentencing factors strongly favor Mr. Watson's early release. Reducing his sentence to 33 months, with credit for time served on his previously imposed 75-month sentence is sufficient but no greater than necessary to satisfy the sentencing objectives.

### CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion [Doc. No. 84] be, and the same hereby is, **GRANTED**; and his 75-month aggregate sentence be, and the same hereby is, reduced to 33 months with credit for time served.

---

[14] Attached to the Motion are various character letters not only from family, [Doc. No. 84-10], but also from fellow inmates attesting to the positive impact that Mr. Watson has had on their lives. [Doc. No. 84-8].

19

The Clerk is directed to send a copy of this Memorandum Opinion and Order to the counsel of record and to the Director of the Bureau of Prisons.

Alexandria, Virginia
August 27, 2024

_____
Anthony J. Trenga
Senior U.S. District Judge